*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHAD EARL SHARICK,

        Defendant-Appellant.

UNPUBLISHED
April 30, 2026
11:27 AM

No. 366333
Livingston Circuit Court
LC No. 2022-027346-FH

Before: RIORDAN, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of second-degree child abuse, MCL 750.136b, and domestic violence (second offense), MCL 750.81.[1] The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 8 years to 25 years' imprisonment for child abuse and one year in jail for domestic violence. We affirm.

## I. BACKGROUND

This case arises out of defendant's physical attack on his eight-year-old son. The victim testified that defendant "got mad," grabbed him by the head, picked him up, and threw him on his bed. The victim stated that it was not hard for him to breathe when defendant grabbed him. When the victim was asked whether defendant's hand touched any other part of his body, the victim responded, "No." But he also testified that it was hard to remember because it was "a long time ago."[2] The victim described defendant as "mean," said that defendant was mad at him "most of the time," and that defendant had made him do pushups or jumping jacks when he was mad. The victim recalled another occasion where defendant "got mad," grabbed the victim by the arm, and

---

[1] The jury acquitted defendant of assault with assault with intent to commit great bodily harm less than murder or by strangulation, MCL 750.84.

[2] The victim was ten years old when he testified at trial.

-1-

threw him on a bed. The victim also indicated that defendant had slapped him in the mouth once, causing his lip to bleed.

A Children's Protective Services (CPS) worker examined the victim shortly after the incident and observed redness on the back of the victim's shoulder blade, a scratch or red mark under his right ear, and a scratch on his neck. One of the police officers who responded to the incident testified that he observed marks and bruising on the victim's neck, chest, back, and legs. The CPS worker and the officer each took pictures of the victim's injuries. The pictures were admitted into evidence at trial. The victim was taken to a hospital. The nurse who examined the victim testified that she observed red abrasions on both sides of the victim's neck. She stated that the red color of the abrasions indicated that they were recent. The victim also had tenderness to the upper back of his neck and his upper chest. The forensic examiner that interviewed the victim testified that the victim reported defendant had choked him, thrown him on the bed, kneed him, and had him do pushups. The victim told the forensic examiner that "he couldn't breathe," and said being choked "was like holding his breath."

Defendant testified he had grown up as a "semi pro boxer and cage fighter." Defendant stated that police and firetrucks responded to defendant's home the night before the subject incident because the victim had taken defendant's girlfriend's phone and accidentally called 911. Defendant made the victim go to the corner and do pushups and jumping jacks as a punishment. Later, the victim got out of bed repeatedly and again tried to take defendant's girlfriend's phone to get on the internet. Defendant admitted that he tried to "put fear" into the victim as discipline, and that he grabbed the victim by the head to "firmly put his head down onto the bed" before scolding him. Defendant also admitted that he "backhanded" the victim on the mouth as discipline on another occasion, which caused the victim's lip to split. Defendant denied intentionally hurting the victim or hitting the victim out of anger. But he admitted he put his hands on the victim when he "was upset for discipline."

Defendant was convicted and sentenced as stated. After sentencing, defendant moved for a new trial or a *Ginther*[3] hearing alleging ineffective assistance of counsel because defendant's trial counsel did not request a special jury instruction defining "reasonable force" for the purposes of the second-degree child-abuse statute. The trial court denied defendant's motion, finding no error by trial counsel. Defendant now appeals.

## II. OTHER-ACTS EVIDENCE

Defendant argues that he is entitled to a new trial because the trial court abused its discretion by admitting other-acts evidence of defendant's history of child abuse and domestic violence.

We review the trial court's decision to admit evidence for an abuse of discretion but review de novo questions of law such as whether evidence is admissible under a particular rule or statute. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "An abuse of discretion occurs when the result is outside the range of principled outcomes." *People v Brown*, 279 Mich App 116,

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

144; 755 NW2d 664 (2008). "A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law." *Denson*, 500 Mich at 396.

Before trial, the prosecution gave timely notice that it intended to introduce evidence of defendant's prior history of domestic violence and child abuse as other-acts evidence under MCL 768.27b and MRE 404(b). The evidence in question was an order terminating defendant's parental rights to several of his minor children. The order contained a summary of the testimony of one of defendant's other children, in which she described defendant abusing her siblings, including picking up the child's sister by her hair to lift her off the ground. Defendant objected to the admission of the other-acts evidence because it was beyond the 10-year limitation of MCL 768.27b. The trial court stated that, despite the other-acts evidence being "one year past [the] arbitrary ten year marker" of MCL 768.29b, the interests of justice would be "served by allowing the admission of the evidence" as other-acts evidence under MCL 768.29b. The trial court further stated that, under MRE 404(b), the evidence was relevant to prove intent, absence of mistake, absence of accident, or common plan or scheme.

At trial, defendant objected again to admission of the termination order as unduly prejudicial. The trial court agreed, in part, but allowed the prosecutor to admit a redacted version of the document, stating "[j]ust the evidence of what happened at the prior incident is what the Court is allowing under the court rules [and] the statute, not that [defendant] pled guilty to jurisdiction for [a neglect and abuse] case eleven years ago, not that his rights were terminated."

"The general rule under MRE 404(b) is that evidence of other crimes, wrongs, or acts is inadmissible to prove a propensity to commit such acts." *Denson*, 500 Mich at 397.[4] But the prohibition against the use of other-acts evidence to show propensity does not apply in the context of domestic violence. See MCL 768.27b; *People v Pattison*, 276 Mich App 613, 616; 741 NW2d 558 (2007). At the time of trial, MCL 768.27b(1) stated:

> Except as provided in [MCL 768.27b(4)], in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if not otherwise excluded under Michigan rule of evidence 403. [MCL 768.27b(1), as amended by 2018 PA 372.]

However, "[e]vidence of an act occurring more than 10 years before the charged offense is inadmissible under this section unless the court determines," in relevant part, "[a]dmitting the evidence is in the interest of justice." MCL 768.27b(4)(d). "To avoid rendering the 10-year limit nugatory," the interest-of-justice exception to MCL 768.27b should be narrowly construed. *People v Rosa*, 322 Mich App 726, 734 (2018). Thus, "evidence of prior acts that occurred more

---

[4] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of defendant's trial.

than 10 years before the charged offense is admissible under MCL 768.27b only if that evidence is uniquely probative [or] if the jury is likely to be misled without admission of the evidence." *Id*.

Although the trial court found that the interests of justice supported admitting the evidence under MCL 768.27b, the trial court did not articulate any reasons that the evidence was "uniquely probative" or that "the jury [was] likely to be misled without admission of the evidence." *Id*. Instead, the trial court simply dismissed the ten-year limitation as "arbitrary" and admitted the evidence in the interest of justice for the same reasons that it would otherwise have been admitted if it had occurred less than 10 years ago.

But the trial court also concluded that the other-acts evidence was admissible under MRE 404(b) because it demonstrated evidence of intent, absence of mistake, lack of accident, or common plan or scheme. MRE 404(b)(1) governs the admissibility of other-acts evidence and provided as the time of trial:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1), as amended October 11, 2017, 501 Mich ccviii-ccix (2018).]

In *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), our Supreme Court developed a four-prong test to determine whether evidence of other acts is admissible under MRE 404(b):

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

Unlike MCL 768.27b, MRE 404(b) has no temporal limitation because "[t]he remoteness of the other act affects the weight of the evidence rather than its admissibility." *Rosa*, 322 Mich App at 735 (cleaned up). Further, to the extent that the other-acts evidence also reflects on defendant's character, MRE 404(b) is a rule of inclusion: "evidence relevant to a noncharacter purpose is admissible under MRE 404(b) *even if* it also reflects on a defendant's character," and "is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010). And "[a]ny undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test." *Id*. "If the prosecution creates a theory of relevance based on the alleged similarity between a defendant's other act and the charged offense, [courts] require a 'striking similarity' between the two acts to find the other act admissible." *Denson*, 500 Mich at 403.

In this case, the prosecution recited intent, scheme, plan, and absence of mistake or accident as proper noncharacter purposes for admission of the arrest video under MRE 404(b). This recitation satisfied the first element of the *VanderVliet* test. See *VanderVliet*, 444 Mich at 74.

We conclude that the trial court did not abuse its discretion by ruling that the other-acts evidence was both material and probative as to defendant's common plan or scheme of using physical abuse as parental discipline against his children. Other acts are admissible to establish a defendant's common scheme if the defendant's actions show common features to an extent that "indicate[s] the existence of a plan rather than a series of similar spontaneous acts[.]" *People v Sabin (After Remand)*, 463 Mich 43, 65-66; 614 NW2d 888 (2000) (cleaned up). Common schemes need not be identical and need only show sufficient common features to support the inference that such features are part of a general plan. *Id*. The other-acts evidence bore sufficient common features to the actions that defendant was charged for in this case. The other-acts evidence reflected that defendant previously grabbed one of his children by her hair and lifted her nearly off the ground and, in this case, defendant grabbed the victim by his head and forced him onto his bed. The trial court found that this evidence was probative because it tended to show intent, absence of mistake, absence of accident, or common plan or scheme. We agree that the common features rendered this evidence logically relevant and probative.

Further, the probative value was not substantially outweighed by the danger of unfair prejudice for the purposes of MRE 403. See *VanderVliet*, 444 Mich at 74-75. Our Supreme Court has held:

> The weighing of evidence's probative value against its prejudicial effect requires a balancing of several factors, including the necessary time to present the evidence, whether the evidence is needlessly cumulative, how directly probative the evidence is, how necessary the fact to be proven by the evidence is, whether the evidence would mislead the jury, and whether there is an alternative and less potentially harmful way to prove the fact. [*People v Sharpe*, 502 Mich 313, 331-332; 918 NW2d 504 (2018).]

"All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). "In essence, evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017).

As discussed above, the other-acts evidence was similar to the charged crimes. Indeed, the remoteness in time of the other-acts evidence reduced its probative value. See *People v Morrison*, 184 Mich App 689, 691; 459 NW2d 9 (1990) (concluding that a defendant's 16-year-old murder conviction had low probative value because of its remoteness in time). But the other-acts evidence did not take much time to present, was not needlessly cumulative, and did not pose a danger of misleading the jury. The prosecution intended to introduce the testimony of the other child who witnessed defendant lifting the other child up by her hair, but that witness testified that she could not recall events that occurred more than 10 years ago because of the passage of time. The trial

court allowed the other-acts evidence, with appropriate redactions. The certified record did not create any unfair prejudice that would substantially outweigh its probative value.

Finally, the trial court provided a routine limiting instruction to the jury during its final jury instructions:

> The prosecution has introduced evidence of claimed acts of domestic violence by the defendant for which he is not on trial. Before you may consider such alleged acts as evidence against the defendant, you must first find that the defendant actually committed such acts. If you find that the defendant did commit those acts, you may consider them in deciding if the defendant committed the offenses for which he is not on trial. You must not convict the defendant here solely because you think he is guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find him not guilty.

Admission of the other-acts evidence was probative, and although it was prejudicial to defendant, was not so prejudicial that we are convinced that the trial court's decision to admit the evidence under MRE 404(b) fell outside the range of reasonable outcomes.

Regardless, even if the trial court did abuse its discretion, defendant is not entitled to relief because he cannot show that the error was outcome-determinative. See *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). There was overwhelming evidence of defendant's guilt beyond the other-acts evidence. The victim testified that defendant grabbed him by the head and forced him down onto a bed. The nurse, the CPS worker, and the investigating officer all testified that the victim had red marks and bruising on his neck and chest. Pictures of the victim's injuries were admitted into evidence. The nurse, CPS worker, and forensic interviewer all testified that the victim told them defendant had choked him. And defendant admitted to grabbing the victim by the head and forcing him down onto the bed as discipline and to "put fear" into him. Further, both the victim and defendant testified that defendant had backhanded the victim in the mouth on another occasion, splitting his lip. Therefore, even if admission of the other-acts evidence was erroneous, the error did not affect the outcome of the trial.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that his trial counsel was ineffective for failing to request a special jury instruction about what constituted reasonable force for parental discipline. We disagree.

An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). We review de novo constitutional questions and the trial court's findings of fact, if any, are reviewed for clear error. *Id*.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Yeager*, 511 Mich at 488, citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance,

there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up).

Defendant argues that trial counsel's failure to request a special jury instruction about what constituted reasonable force for parental discipline was deficient performance. Criminal defendants are "entitled to have a properly instructed jury consider the evidence against [them]." *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017) (cleaned up). The jury instructions must include the elements of the charged crimes, as well as defenses, material issues, or theories that are supported by the evidence. *Id*. at 347-348. "Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *Yeager*, 511 Mich at 489.

The trial court instructed the jury about the elements of each of the charged offenses. The trial court also gave the following standard jury instruction which comported with M Crim JI 17.24 and was consistent with MCL 750.136b(9):

> It is not a crime to discipline a child. A parent may use force to discipline a child, but this does not mean that any amount of force may be used. The law permits only such force as is reasonable. The defendant is not required to prove that the acts alleged here were reasonable. The prosecutor must prove beyond a reasonable doubt that the force used was not reasonable as discipline.

"Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). This Court has held that the statute governing child abuse adequately apprises the general public regarding the acceptable use of force against a child. See *People v Gregg*, 206 Mich App 208, 213; 520 NW2d 690 (1994). We likewise conclude that an instruction that essentially repeats the statute adequately apprises a jury regarding the acceptable use of force against a child. Further, it is the jury's role to determine what constitutes reasonable force. *People v Palmer*, 392 Mich 370, 375-376, 220 NW2d 393 (1974) ("It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact."). A special instruction could have invaded the province of the jury. Moreover, the jury did not indicate any confusion, such as by sending out a question or note regarding the meaning of reasonableness. The jury was adequately instructed regarding the use of reasonable force to discipline a child, and defendant's counsel was not ineffective for failing to raise an objection that would have been futile. See *Head*, 323 Mich App at 539.

IV. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues that there was insufficient evidence to convict defendant of second-degree child abuse. We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the

prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (cleaned up). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id.* (cleaned up). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

Defendant first argues that there was insufficient evidence that he possessed the required *mens rea* of knowingly or intentionally harming his child. Second-degree child abuse is a general-intent crime that occurs if, in relevant part, "a person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results." *People v Maynor*, 256 Mich App 238, 242; 662 NW2d 468 (2003), quoting MCL 750.136b(3)(b). General-intent crimes require "merely the intent to perform a proscribed physical act," as opposed to specific intent crimes, which "require[] a particular criminal intent beyond the act done." *People v Whitney*, 228 Mich App 230, 254; 578 NW2d 329 (1998). A defendant's *mens rea* is not relevant to a general-intent crime. *People v Piper*, 223 Mich App 642, 650; 567 NW2d 483 (1997). Accordingly, to prove the intent element of second-degree child abuse, the prosecutor only needed to prove that defendant knowingly or intentionally engaged in the acts in question, not that he intended to cause serious physical or mental harm to the victim. Defendant admitted at trial that he grabbed the victim because the victim was not listening to him, so defendant "tried to put fear in him." Accordingly, there was sufficient evidence of the intent element.

Defendant further argues that there was insufficient evidence to support the jury's finding that his actions were not reasonable discipline. The child-abuse statute "does not prohibit a parent or guardian . . . from taking steps to reasonably discipline a child." *People v Lawhorn*, 320 Mich App 194, 198; 907 NW2d 832 (2017), quoting MCL 750.136b(9). But the evidence against defendant's claim of reasonable force in the exercise of parental discipline was strong. Multiple witnesses testified about the marks and abrasions on the victim, and pictures of the victim's injuries were admitted into evidence. Although some witnesses disputed whether the victim had any marks on him, "it is the role of the jury, not this Court, to determine the weight of the evidence or the credibility of witnesses." *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). Viewing the testimony and evidence in a light most favorable to the prosecution, there was sufficient evidence to enable the jury to find beyond a reasonable doubt that defendant's actions were not reasonable discipline, and that defendant did not use reasonable force.

Affirmed.


/s/ Michael J. Riordan
/s/ James Robert Redford
/s/ Sima G. Patel

-8-